IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA ex rel. ISIDORO GUERRERO, | ) ) ) | |
| Petitioner, | ) ) | No. 11 CV 2197 |
| v. | ) ) | Judge Robert W. Gettleman |
| DAVE REDNOUR, Warden, Menard Correctional Center, | ) ) ) | |
| Respondent. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Petitioner Isidoro Guerrero filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons discussed below, the habeas petition is denied without an evidentiary hearing. The court declines to issue a certificate of appealability.

## BACKGROUND

Following a jury trial in the Circuit Court of Kane County, petitioner was convicted of first-degree murder and sentenced to 38 years' imprisonment for the murder of his girlfriend, Carrie Carlsen. Petitioner appealed, and the Illinois Appellate Court affirmed. Order, People v. Guerrero, No. 2-03-0097 (Ill App. Ct. Aug. 27, 2004). In relevant part, petitioner argued that the trial court abused its discretion in giving non-pattern jury instructions. The Appellate Court held that the instructions accurately stated the law, and that even if they were erroneous, they could not have prejudiced petitioner because of the overwhelming evidence of his guilt. Order, People v. Guerrero, No. 2-03-0097 (Ill. App. Ct. Aug. 27, 2004). Petitioner renewed this argument in his ensuing petition for leave to appeal ("PLA"), which the Illinois Supreme Court denied. Order, People v. Guerrero, No. 99309 (Ill. Nov. 24, 2004).

Petitioner then filed a postconviction petition pursuant to 725 ILCS 5/122-1 et seq. He raised a variety of arguments, including in relevant part the following:

(1) the trial court improperly allowed the state to amend the indictment;

(2) the state failed to disclose a case pending against prosecution witness Edwards; and

(3) his trial counsel was ineffective for failing to:

   (a) argue that petitioner's statement to police was involuntary due to his medical condition at the time; and

   (b) argue that petitioner could not form the requisite mental state to commit murder due to his medical condition;

   (c) raise petitioner's amended indictment claim at trial; and

(4) his appellate counsel was ineffective for failing to argue that the indictment was improperly amended.

The trial court dismissed the petition. Order, People v. Guerrero, No. 00-CF-2739 (Kane Cty. Cir. Ct. Apr. 11, 2008).

On appeal, petitioner reiterated the second argument, as well as the first two aspects of the third claim. The Illinois Appellate Court denied petitioner's motion. Order, People v. Guerrero, No. 00-CF-2739 (Ill. App. Ct. Mar. 29, 2010). Petitioner then filed a PLA to the Illinois Supreme Court, raising the same four claims listed above that, among other claims, petitioner had raised in his postconviction petition. The Illinois Supreme Court denied the PLA. Order, People v. Guerrero, No. 110325 (Ill. Sept. 29, 2010).

On August 30, 2011, petitioner filed the instant pro se petition for a writ of habeas corpus, raising what he styles as three claims, and respondent construes as four. As stated in the petition and reiterated in his reply brief, petitioner's claims are:

(1) the trial court improperly instructed the jury regarding second degree murder, cause of death, and evidence of other conduct, which violated petitioner's due process right to a fair trial;

(2) he received ineffective assistance of counsel when:

(a) his trial counsel failed to introduce evidence that petitioner's statement to police was involuntary, and that he could not form the requisite mental state for first-degree murder, due to his medical condition (hypoglycemia); and

(b) his trial, appellate, and postconviction appellate counsel failed to raise the improperly amended indictment claim (see below); and

(3) the trial court violated petitioner's due process rights by allowing the state to improperly amend the indictment.

In addition to these, respondent construes the petition as asserting a claim that:

(4) the prosecution failed to disclose a case pending against one of its witnesses, in violation of <u>Brady v. Maryland</u>, 373 U.S. 83 (1963).

## DISCUSSION

For the reasons discussed below, petitioner's claims regarding jury instructions and amended indictment are procedurally defaulted, as is his claim regarding his trial and appellate counsels' allegedly ineffective assistance. His claim of ineffective assistance on postconviction review is not a cognizable claim on federal habeas review. The additional claims of ineffective assistance fail on the merits.

**I.     Jury Instruction Claim**

Petitioner first claims that the trial court improperly instructed the jury on second degree murder, cause of death, and evidence of other conduct, which violated petitioner's due process right to a fair trial. Because, however, petitioner failed to fairly present it as a federal constitutional claim in the Illinois Appellate Court and Illinois Supreme Court, the claim is

procedurally defaulted and this court may not review it. See Baldwin v. Reese, 541 U.S. 27, 29 (2004); Smith v. McKee, 598 F.3d 374, 382 (7th Cir. 2010), citing O'Sullivan v. Boerckel, 526 U.S. 838, 848 (1999) ("A petitioner's failure to fairly present each habeas claim to the state's appellate court and supreme court in a timely manner leads to a default of the claim, thus barring the federal court from reviewing the claim's merits.").

To satisfy the fair presentation requirement, a petitioner must have raised both the operative facts and the controlling legal principles, e.g., Sanders v. Cotton, 398 F.3d 572, 580 (7th Cir. 2005), and must alert the state courts that he is relying on a provision of the federal constitution, Perruquet v. Briley, 390 F.3d 505, 514 (7th Cir. 2004). Although he need not "cite book and verse on the federal constitution," id., quoting Picard v. Connor, 404 U.S. 270, 278 (1971) (alterations and citation omitted), a petitioner must "alert the state courts to the federal underpinnings of his claim," id. (citation omitted). In determining whether petitioner has done so, the court "consider[s] the specific facts of each case," looking at four factors in particular—whether petitioner failed to: "(1) rely on pertinent federal cases employing constitutional analysis; (2) rely on state cases applying constitutional analysis to a similar factual situation; (3) assert the claim in terms so particular as to call to mind a specific constitutional right; or (4) allege a pattern of facts that is well within the mainstream of constitutional litigation." Verdin v. O'Leary, 972 F.2d 1467, 1473-74 (7th Cir. 1992) (citations omitted). Under this standard, petitioner has clearly failed to present the federal aspect of his jury instruction claim.

Petitioner's counseled briefs in the Illinois Appellate Court and his pro se PLA in the Illinois Supreme Court presented the jury instruction claim as solely a state-law issue. Petitioner did not mention a federal constitutional provision or cite any case analyzing the jury instruction

issue from a federal constitutional perspective; he relied entirely on Illinois state cases applying Illinois law. The first and second Verdin factors therefore do not suggest that petitioner fairly presented a federal claim.

Nor does the third factor help petitioner. In the Appellate Court, petitioner argued that "[t]he erroneous instructions deprived the jury of its role by directing a verdict of guilty of first degree murder." While this may have called to mind a federal due process claim, without explicitly invoking and discussing federal law, "an innocuous reference to 'a right to an impartial jury' does not call to mind [a] federal right . . . ." White v. Gaetz, 588 F.3d 1135, 1139 (7th Cir. 2009). Even if this statement did call to mind the concept of federal due process, merely mentioning due process does not fairly present a federal claim. Riggins v. McGinnis, 50 F.3d 492, 494 (1995) ("'Due process' is such a ductile concept that phrase-dropping is the equivalent of no argument at all.").

Nor does the fact that, as petitioner appears to contend, the Illinois and federal constitutions have similar due process language, mean that petitioner fairly presented a federal claim by virtue of presenting a similar state-law claim. The United States Supreme Court has unambiguously held that this is insufficient to call to mind a specific federal constitutional right. See Baldwin, 541 U.S. at 33. Even assuming that the Illinois due process clause allows for petitioner's claim, the court cannot assume that Illinois courts would construe that state's due process clause in the same manner as the federal due process clause. Anderson v. Harless, 459 U.S. 4, 6 (1982) ("[I]t is not enough . . . that a somewhat similar state-law claim was made.").

Next, petitioner's PLA asserted that "[t]he cumulative effect of the instructional errors deprived [petitioner] of a fair trial." Again, without elaboration or citation to any federal case

law or constitutional provisions, this assertion is insufficient to fairly present a federal claim. Petitioner proceeded to cite only Illinois cases applying Illinois law; the focus of his argument was clearly the violation of Illinois Supreme Court Rule 451, requiring that pattern instructions be used unless the court finds that they do not accurately state the law.

Relatedly, regarding the fourth Verdin factor—whether the petitioner alleged a fact pattern well within the mainstream of constitutional litigation—the jury instruction claim was framed primarily as a claim that the trial court failed to comply with Illinois Supreme Court Rule 451's requirement that pattern jury instructions be used. But "the fact that [a jury] instruction was allegedly incorrect under state law is not a basis for habeas relief." Estelle v. McGuire, 502 U.S. 62, 71-72 (1991). This claim thus did not fall within the mainstream of federal constitutional litigation.

Nonetheless, petitioner's reply argues that he fairly presented the claim to the state courts by, "(a) relying on state cases applying federal constitutional analysis to a similar factual situation, (b) assert[ing] the claim in terms so particular as to call to mind a specific constitutional right[,] and (c) alleging a pattern of facts that is well within the mainstream of federal litigation." He is incorrect. No state case petitioner cited in support of this claim before the Illinois Appellate Court or Illinois Supreme Court employs federal constitutional analysis. His reply brief in support of the instant petition indeed cites federal case law, but none of the cases cited in his state-court briefs cite these federal cases. Petitioner appears to argue that because Illinois state law employs an analogous analysis, that suffices—but it does not. E.g., Verdin, 972 F.2d at 1476 ("Substantive deviations between superficially similar federal and state claims often exist.") (quotation marks and citation omitted). The Seventh Circuit has explained

that it is the petitioner's burden to demonstrate that there is a "clonal relationship of the federal and state claims which would have likely alerted the state tribunal to the federal nuances." Id. (quotation marks and citation omitted). Petitioner has not met that burden. And finally, petitioner fails to elaborate on his assertion that this fact pattern is well within the mainstream of federal constitutional litigation, likely because it clearly is not.

Because petitioner thus failed to fairly present the federal aspect of his jury instruction claim to the Illinois Appellate and Supreme Courts, this claim is procedurally defaulted, and this court may not review it absent a showing of cause and prejudice, or a fundamental miscarriage of justice (i.e., actual innocence). Petitioner does not argue that this default was excused by either cause and prejudice or a fundamental miscarriage of justice. Even if he had—he has raised both of these avenues in the context of other defaulted claims—they are, for reasons discussed below, unavailing. Accordingly, the court may not reach the merits of petitioner's jury instruction claim.

## II. Improperly Amended Indictment Claim

Next, petitioner claims that he is entitled to habeas relief because the trial court improperly allowed the state to amend the indictment. This court cannot, however, review this claim, because petitioner failed to raise it in a complete round of state-court review. Although petitioner did present this claim in his postconviction petition (as well as in his postconviction PLA), his appointed counsel did not raise it on appeal of the denial of the postconviction petition. It is therefore procedurally defaulted. 28 U.S.C. § 2254(b); O'Sullivan, 526 U.S. at 845; Guest v. McCann, 474 F.3d 926, 929 (7th Cir. 2007).

Petitioner points to ineffective assistance of his trial, appellate, and postconviction appellate counsel as the cause of his failure to exhaust the amended indictment claim. See

Murray v. Carrier, 477 U.S. 478, 488-89 (1986). To serve as cause to excuse procedural default, however, ineffective assistance must itself be properly exhausted in the state courts. As discussed below, however, petitioner failed to exhaust his ineffective assistance claims with respect to his trial and appellate counsel. See Edwards v. Carpenter, 529 U.S. 446, 453 (2000).

Petitioner also contends that his postconviction appellate counsel rendered "unacceptably poor legal representation" by failing to appeal the denial of his claim that the trial court erred in permitting the prosecution to amend the indictment, but "absent a right to counsel in a collateral proceeding"—not present here—"an attorney's errors in the proceeding do not establish cause for a procedural default." Martinez v. Ryan, __ U.S. __, 132 S. Ct. 1309, 1315 (2012), discussing Coleman v. Thompson, 501 U.S. 722 (1991) (holding that an attorney's error can constitute cause for a procedural default only if the error constitutes constitutionally ineffective assistance). Although Martinez recognized a narrow exception to Coleman, that exception is limited to situations in which a petitioner has alleged inadequate assistance of counsel at initial-review collateral proceedings. Here, as in Coleman, "counsel's alleged error was on appeal from an initial-review collateral proceeding," and "[t]hus his claims had been addressed by the state habeas trial court." Martinez, 132 S.Ct. at 1311. Therefore, the Martinez exception does not apply, and any alleged defectiveness of petitioner's postconviction appellate counsel cannot constitute cause for his failure to exhaust the amended indictment claim.

Petitioner also contends that the court may review the amended indictment claim because he is actually innocent of first-degree murder (although he acknowledges that he would properly have been found guilty of second-degree murder) and thus that failure to consider the claim will result in a fundamental miscarriage of justice. See Coleman, 501 U.S. at 748. To accept that

8

contention would require the court to ignore the well-established law that a petitioner attempting to bypass a procedural bar by claiming actual innocence must support that claim with "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." Schlup v. Delo, 513 U.S. 298, 324 (1995). That evidence must make "it is more likely than not that no reasonable juror would have convicted him of the underlying offense." Id.; see Coleman v. Hardy, 628 F.3d 314, 318 (7th Cir. 2010). Petitioner has presented no new evidence, let alone evidence that would satisfy that standard. Absent such evidence, the court cannot conclude that actual innocence excuses petitioner's procedural default.

## V. Ineffective Assistance of Counsel

Petitioner's contention that his trial counsel rendered ineffective assistance fails on the merits. Petitioner argues that his trial counsel was ineffective for failing to attempt to suppress petitioner's confession on the ground that petitioner's statement to police was involuntary due to his hypoglycemia (although he did move to quash petitioner's arrest and suppress all resulting evidence, and after that motion was denied, moved to suppress petitioner's confession on other grounds), and for failing to pursue a trial theory that, as a result of his hypoglycemic state, he was incapable of the mental state required for first-degree murder. This claim was addressed and rejected by the Illinois Appellate Court on postconviction review, which found that petitioner was not prejudiced by his trial counsel's failure to pursue the hypoglycemia theory. Order, People v. Guerrero, No. 00-CF-2739 (Ill. App. Ct. Mar. 29, 2010). This court applies "doubly deferential judicial review" to that determination that petitioner could not demonstrate prejudice under Strickland v. Washington, 466 U.S. 668 (1984). Knowles v. Mirzayance, 556 U.S. 111,

9

123 (2009); see Price v. Thurmer, 637 F.3d 831, 839 (7th Cir. 2011) ("[A] state court's determination that a defendant was not prejudiced by his lawyer's ineffectiveness is entitled to great weight in a federal habeas corpus proceeding, as emphasized with rather unexpected vigor by the Supreme Court" in Harrington v. Richter, __ U.S. __, 131 S.Ct. 770, 786 (2011).

Here, the Illinois Appellate Court reasoned as follows:

> Although [petitioner] alleges that he had diabetes, that he had not taken his medication (which was prescribed on the day of the killing), that he had consumed alcohol, and that he had not eaten, he only speculates that, had counsel pursued a defense based on these facts, the trial's outcome likely would have been different. As [petitioner's] articles point out, such facts might or might not have any effect on a person's behavior. [Petitioner] offers no medical evidence to suggest that, in this case, [petitioner] indeed was affected at all, much less affected to the extent necessary to negate his intent to kill and the voluntariness of his statements. The record itself supports the opposite, as [petitioner] confessed after indicating that he understood his rights and was acting voluntarily. In sum, [petitioner] merely guesses that, had counsel investigated his medical history, she would have had a reasonable probability of winning his acquittal, and such speculation cannot be a basis for a showing of ineffective representation.

This holding was neither contrary to, nor an unreasonable application of, Strickland's standard for ineffective assistance, which (as the Appellate Court correctly explained) requires that a defendant demonstrate a reasonable probability that, had it not been for his lawyer's ineffectiveness, the outcome of the trial would have been different. Strickland, 466 U.S. at 694; Price, 637 F.3d at 839. The Appellate Court found that the ample evidence of petitioner's culpability—including the testimony of Kevin Edwards, who testified that petitioner told him he had killed Carlsen—and of the voluntariness of his confession both precluded it from concluding that there was a reasonable probability of a different outcome had petitioner's counsel argued that his confession was involuntary. Because this conclusion did not rely on an unreasonable

application of Strickland or come to a result contrary to that Supreme Court precedent, petitioner is not entitled to habeas relief on the basis of this ineffective assistance claim.[1]

Petitioner also challenges his trial, appellate, and postconviction appellate counsels' assistance on the ground that they should have argued that the trial court erred in allowing the prosecution to amend the indictment to add strangulation as a cause of death. (Originally, the indictment listed only blunt force trauma as the cause of death.) With respect to his trial and appellate counsels' alleged ineffectiveness on this basis, the claim is procedurally defaulted. Petitioner argued that his trial and appellate counsel were ineffective for failing to argue that the indictment was improperly amended in both his postconviction petition and PLA from the denial of his postconviction appeal, but he failed to raise that contention in his appeal from the denial of the postconviction appeal. Because petitioner thus failed to raise these claims through one complete round of state court review, they are procedurally defaulted. 28 U.S.C. § 2254(b); O'Sullivan, 526 U.S. at 845; Guest, 474 F.3d at 929. Petitioner argues neither cause to excuse his default nor a miscarriage of justice to excuse this procedural default. And even had petitioner asserted that a fundamental miscarriage of justice would occur if the court were not to consider the claims on the merits, such an argument would be unavailing, for the reasons discussed above.

Finally, petitioner's claim that his postconviction counsel rendered ineffective assistance is not cognizable on federal habeas review. 28 U.S.C. § 2254(I) ("[T]he ineffectiveness or

---

[1] As part of this claim, petitioner also contends that the Illinois Appellate Court applied an incorrect standard in ruling on his hypoglycemia claim, failing to adhere to Illinois Supreme Court precedent. Because this claim raises a question of purely state law, it is noncognizable on federal habeas review.

11

incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief.").

**V.     Brady Claim**

Respondent construes the petition as having raised a claim that the prosecution failed to disclose a pending charge in Michigan against one of its witnesses and the alleged fact that this witness was receiving leniency in exchange for his testimony against petitioner, in violation of its duty under Brady v. Maryland, 373 U.S. 83 (1963), because petitioner could have used that information to impeach the witness. Both the petition and petitioner's reply brief, however, indicate that petitioner's contention is actually that he would be entitled to an evidentiary hearing on this claim if the court were to conclude that his claim that his trial counsel was ineffective for failing to advance the hypoglycemia-related arguments discussed above was meritorious. This position is logical. If petitioner's confession had been suppressed, the impeachment evidence against Edwards (assuming petitioner is correct that such evidence existed) would have been material, because absent the confession, Edwards's testimony was the prosecution's primary evidence against petitioner. But because the court has rejected that ineffective assistance claim, petitioner's request for an evidentiary hearing regarding his Brady claim is denied.

Moreover, if petitioner's claim is as respondent characterizes it—which is possible, given that petitioner's reply brief does not explicitly reject respondent's characterization—it would nonetheless fail on the merits. Petitioner's Brady argument was addressed, and rejected, on the merits by the Illinois Appellate Court on direct review. That court found that petitioner had failed to demonstrate the elements of a Brady violation, which requires that "[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is

12

impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." Strickler v. Greene, 527 U.S. 263, 281-82 (1999). Specifically, the Appellate Court found no evidence that the State suppressed the evidence of the pending charge or that this evidence was material (and thus that petitioner was prejudiced).

When a state court has addressed the merits of a habeas petitioner's claim, he is not entitled to a writ of habeas corpus unless the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or it was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Because the state court decision was not an unreasonable application of applicable Supreme Court law (namely, Brady), and was not based on an unreasonable factual determination, petitioner is not entitled to relief on this claim.

The Illinois Appellate Court reasonably found that petitioner's Brady argument was unavailing because there was no indication that the prosecution was aware of the pending charge against its witness—and therefore no indication that the prosecution had suppressed that evidence. After parsing the record, that court correctly concluded that nothing indicated either that the authorities who investigated and prosecuted petitioner were aware of the Michigan proceedings, or that the Michigan authorities knew that Edwards was testifying in petitioner's trial. Rather, the record reflected only that petitioner's brother testified that the witness, Kevin Edwards, informed him that Edwards had criminal charges pending against him in Michigan. Because "[t]he obligation to disclose exculpatory or impeaching information under Brady is

13

limited to information which is then known to the government," United States v. Earnest, 129 F.3d 906, 910 (7th Cir. 1997) (citations omitted), the prosecution did not have a Brady obligation to make petitioner aware of this information.

Moreover, the Appellate Court reasonably determined that petitioner had failed to show any ensuing prejudice. As the Supreme Court has explained, "there is never a real 'Brady violation' unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict." Strickler, 527 U.S. at 281; see United States v. Agurs, 427 U.S. 97, 112 (1976). Applying that precedent, the Illinois Appellate Court found that the fact of the pending charges would not have undermined Edwards's account or his credibility if petitioner's counsel had attempted to impeach Edwards on that basis. Edwards's testimony was corroborated by other evidence presented at trial: police testimony as well as petitioner's taped confession. Further, petitioner was able to impeach Edwards with his prior felony conviction and with evidence that the prosecution was paying for his travel and lodging. As the Illinois Appellate Court found, given the overwhelming evidence against petitioner and the other impeaching evidence against Edwards, the absence of this additional alleged piece of impeaching evidence was immaterial. See, e.g., Jardine v. Dittman, 658 F.3d 772, 777-78 (7th Cir. 2011) (per curiam). This conclusion was neither contrary to, nor an unreasonable application of, Supreme Court precedent. Thus, to the extent that petitioner has raised a claim that the state violated Brady, such a claim is without merit on federal habeas review.

## VI. Evidentiary Hearing

Petitioner requests an evidentiary hearing on his claims, but fails to articulate a basis for his entitlement to such a hearing under § 2254(e)(2). A federal habeas court is "not required to hold an evidentiary hearing" when the state-court record "precludes habeas relief" under § 2254(d)'s limitations. Schriro v. Landrigan, 550 U.S. 465, 474 (2007). Because, as discussed above, petitioner's claims are either procedurally defaulted or patently without merit, an evidentiary hearing would not help petitioner to prove "factual allegations, which, if true, would entitle [him] to federal habeas relief." Id. (citation omitted). Petitioner's request for an evidentiary hearing is therefore denied.

## VII. Certificate of Appealability

A habeas petitioner is entitled to a certificate of appealability only if he has made a substantial showing that he was denied a constitutional right. 28 U.S.C. § 2253(c)(2); see Miller-El v. Cockrell, 537 U.S. 322, 336 (2003); Evans v. Circuit Court of Cook County, Ill., 569 F.3d 665, 667 (7th Cir. 2009). To make that showing, a petitioner must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Slack v. McDaniel, 529 U.S. 473, 484 (2000). When the court has denied a habeas petition on procedural grounds without reaching the petition's underlying constitutional claims—as is the case for some of petitioner's claims here—a petitioner must also show that jurists could debate whether the court's procedural ruling was correct. Id. at 484-85.

15

Petitioner has not shown, nor would he be able to show, that reasonable jurists could debate that this court should have resolved the issues raised in his petition in a different manner. The court therefore declines to issue a certificate of appealability.

## **CONCLUSION**

For the reasons discussed above, the petition for a writ of habeas corpus is denied without an evidentiary hearing, and the court declines to issue a certificate of appealability.

**ENTER:** April 3, 2013

_____
**Robert W. Gettleman
United States District Judge**